Good morning. May it please the court. My name is David Anthony. I represent Billy Ray Riley, the petitioner in this case. I'd like to reserve approximately six minutes for rebuttal if I might. Please keep track of your time. Thank you. Due to ineffective assistance of First State Post-Conviction Counsel. I mentioned the Supreme Court's decision in Martinez because it forms a compelling reason for this court to consider the cumulative effect of trial counsel's errors and omissions and the manner in which they affected the jury's penalty verdict in this case. In the district court, the court denied Riley's claim on the merits that trial counsel was ineffective for failing to investigate and present evidence of Riley's cocaine intoxication. It defaulted an ineffective assistance of trial counsel claim based on counsel's failure to investigate and present evidence of trauma in Riley's childhood and family background. It also held that Riley's claim that trial counsel was ineffective for failing to investigate and present evidence of brain damage was unexhausted and so it wasn't considered. Under this court's en banc decision in Dietrich v. Ryan, this court is obligated to provide a cumulative consideration of Riley's defaulted and non-defaulted ineffective assistance claims to determine the effect that they may have had on the jury's penalty verdict despite the procedural rulings of the district court below. Riley seeks a remand from this court so that he can conduct factual development of his ineffective assistance claims that he contends infect his death sentence. I would like to ask counsel to help me with this. I thought that it was your position that on what I'll call habeas II, when there was a dismissal or however you characterize it, a stay in the bay, went back to the state. At that point, a lot more evidence was put in the record of the nature that you're talking about and other things. Are you saying that in addition to the what I'll call new evidence, which is permitted and not influenced by penholster because it's in the state, that in addition to that, you want to put new evidence on in the United States district court as well? When the court uses the term new evidence, maybe we should clarify what we're talking about. When I filed my opening brief before the Martinez decision, the argument that I made in that brief was that the court erred because it didn't consider Riley's diligence in the second state postconviction proceeding where the claims were presented. I relied on the case from this court, Phillips v. Woodford, that talks about how when you assess a petitioner's diligence, you look to the proceeding where they raise the claim. In this case, as the court mentioned, we're talking about claims that were raised in the second state postconviction petition. That was the argument that I lost below. That was the primary argument that I proceeded with when I filed my opening brief. Are you abandoning your primary argument? Absolutely not. Okay. Absolutely not. So you get two alternatives you're saying we should look at? Correct. So we should take your arguments the way you made them and decide on those, and then we can move on to your new argument. Correct, Your Honor. I believe that those are alternative arguments. I'm not abandoning either of the arguments. What I do contend is that those are two permissible ways to get to the same conclusion that I'm looking for. Either the court looks at the argument in the opening brief about assessing diligence in the proceeding where the claims were raised, or if the court wasn't inclined to do that, it's my position that Dietrich and Dickens now allow the court to review those claims under the default rubric of Martinez v. Ryan. So I'm just arguing that those are two alternatives. Can we just get down to details then in trying to look at that claim, and you tell us how we would analyze it? So if you take the IAC, which was related to both, I'll say, ballistics and impeachment, put those kind of together, and then we'll maybe put the mental health issues over here. Is it your view that those were defaulted on State Habeas II, is that right, according to the state court?  And how does that work when the State Habeas I actually dealt with, for example, the lack of ballistics or the lack of proof in State Habeas I? The way I would respond to that is this court's decisions in Dietrich and Dickens talk about what is a claim. And for example, to respond to the court's argument, for example, as to the bullet trajectory claim, it would be my contention that in State Habeas I, we're only talking about half a claim. We're talking about an allegation of deficient performance, but there's no proffer whatsoever of prejudice. So under Dickens and Dietrich, the question is, is the new claim in State Habeas II, is it a different claim? Does it fundamentally alter the claim that was previously raised in the first state post-conviction? My contention is that it does, because in State Habeas I, there's no proffer of prejudice. And that's an essential element of a Strickland claim. And that was partially the reason why the Nevada Supreme Court denied it. So it would be illogical now to use what was done in State Habeas I to govern what's going on in State Habeas II, because the assumption that there was no evidence is no longer valid. In other words, you can go in and make the claim, which is the bullet trajectory and all this, but you don't have an expert. And then the state court says, well, I've looked at this, and really there's nothing much to support it. So the state says, denied State Habeas I. And then you can come back, and then now you can go get a ballistics expert, and it's a different claim in your view. Yes, Your Honor. In Dietrich and Dickens, the court applies exhaustion analysis, and it talks about whether there's substantial additional evidentiary support for the claim. I think when you take this situation where there's no prejudice in State Habeas I, and then there is prejudice proffered in State Habeas II, I think that under the Aitken v. Spalding case that's cited in Dietrich and Dickens, that that's clearly a fundamentally different claim. And all you need to do, I gather from your perspective, is to make a proffer. The information that was put into the pleadings in State Habeas II fleshed out your position. Since it was procedurally defaulted under the state rules, you've still met your burden. You have not violated pinholster, and you're free to move forward to the federal court with those claims. Correct. Is that right? Well, in your view, I guess the pinholster wouldn't come into play, because you're talking about a claim proffered in state court that the state defaulted, and if it's not an appropriate default, you come up and your habeas can be heard. Correct. And then is that habeas, given the timing now, under AEDPA? Maybe I missed the last part. Was there a question? Yes. I said, is that habeas, now that you've come up, now that you get through all that, is that under AEDPA? Well, I've argued that it does not. And the reason is because 2254D assumes that there's a decision on the merits. And when it was defaulted- Well, two different questions. One, as a matter of time, it falls post AEDPA. But you're saying it doesn't make any difference because there's no decision on the merits in the state court. I think I see the court's distinction here. I think I made both arguments in this case. I made the one argument that because it was defaulted and there was no decision, that AEDPA doesn't apply. I also made, I think, the second argument that the court's talking about with timing, too. That was one of the uncertified issues about whether the AEDPA applies at all because- Does it make any difference in the case? Well, it's- There's no decision on the merits on habeas, too. Assuming you prevail on your first point, that there is a new and separate claim under Dickens because the court said it didn't reach- that in the first claim it didn't reach the question of whether the failure to call was sufficient because there was no argument on prejudice. So now your argument is, well, this is a new claim because this is a claim where there is an argument on prejudice and where we presume there's evidence. Let's assume for the moment that you're correct and that this is a new claim on the ballistics. Then there is no decision on the merits as to that claim because the state relied on a procedural default, which you have said is not one that's independent and whatever the other word is. Adequate. Adequate. Independent and adequate. Okay. So let's presume you prevail up through that and there's no decision on the merits. Then does it make any difference whether AEDPA applies or not? I think that there might be a couple of instances where it may make a small difference. The small differences that I can think of are the issue of timeliness because that was an issue below about the timeliness of claims in the amended petition. So if the court accepted the second argument that this case has been continuously pending since 1995, then the timeliness argument wouldn't apply either. And as the court is aware, 2254E governing factual findings rebutted by clear and convincing evidence, those types of distinctions were also put into AEDPA too. So those fine distinctions may still apply to some parts of the case, but if I prevailed on the second argument that it was continuously pending, then AEDPA wouldn't apply at all. Well, assume you didn't prevail on that because of the language used by the district court. Wouldn't you come back and say in effect it doesn't matter because it's de novo for lack of a state court merits decision? I'm now talking about the impeachment and the ballistics. Yes, Your Honor. That's exactly right. Then if on de novo review we assumed there was IAC, you would still need to address the prejudice issue. Correct, Your Honor. And would you do that on these points? Yes, I will go to prejudice. Before you do that, because I know that's going to take a little while, I just want to be sure I understand your position. Realistically, it doesn't make any difference whether AEDPA applies here because you're going to get de novo review, right? Correct, Your Honor. And from your perspective, the prejudice information that was put into part of the proffer in State Habeas II moves forward. You don't have a penholster problem because the information was presented in state court. So in effect, you're asking us to review de novo the information that was contained in the proffer that's permissible under AEDPA. And I didn't read, I didn't see anything about a complaint about timeliness in the sense that it was barred because it was, he went right, even though he was procedurally barred, it was still moving along in the state court. I gather there's no, nobody's saying that you're blocked in terms of statute, is there? Your Honor, that's correct as to the issues on appeal here. The only difference would be as to the issues the federal court did bar under the time bar. That would be the only difference. And then I guess just one other point is, as I read it, and of course we'll ask the state of Nevada, the district court looked at this under de novo, correct? As to many of the claims. Okay, so these claims that we're, I'm kind of trying, rather than this, I'm trying to look at the first couple of claims, ballistics, the Jackson impeachment. Those appear to be de novo? Well, except as to the E-2 ruling by the district court where he excluded the declaration of Galen Warren, and also as to the ineffective assistance claim at sentencing where the district court excluded all of the mitigation proffered evidence, all of the declarations, the social history report, all that was excluded by the court and not considered based on. But there's no problem, I gather, with the witnesses about Jackson's character and what he's allegedly said about the decedent, about the ballistics report, about the jury instructions that may have conflated at least one of the three elements that had to be proved under Nevada law. None of those are troubled by any rulings by the district court, are they? Correct, with the small exception of that E-2 bar that I just mentioned that precluded the court from even considering. But that's because he was looking as if there were new evidence in federal court rather than state court. Correct. Okay, so now let's just assume there was ineffective assistance on the first prong. What's the prejudice? I'll move on to prejudice since we're... Yes, that's the question, go on to prejudice. All right, let's move on to prejudice. The first argument that I want to talk about is the ineffective assistance of trial counsel for failing to investigate and present evidence of cocaine intoxication at sentencing. I see two claims here. The first is the one... You can talk about my question. Let me go back to it and then we'll get to cocaine because it's a separate thing. My question has to do with the impeachment of Jackson and the ballistics. So the court is asking about the prejudices to that. Yes, and then we can talk about cocaine and whatever else you want to talk about. Anything you want to talk about. But I'm trying to get a question or an answer to this question. Because you have a lot of claims, okay? Yes. And so we're trying to sort them out. And the more you move from claim to claim and mudge them together, then it just makes it harder to analyze. The prejudice for the ballistics claim is the Galen Warren Declaration where he talks about the angle and the trajectory of the shotgun blast and how that could have supported trial counsel's position in the guilt phase that Daryl Jackson could have been the shooter. So that's the proffer that was made. That's the prejudice allegation as to the ballistics claim. And so in your view, that overweighs, for example, Riley saying to him, just asking if he's ready to die, Riley saying that, and then Bowen saying, well, kill me. If you're going to kill me, just kill me. Well, a lot of that depends on the credibility of Jackson himself. Well, of course it does, but also the jury got to hear that. That's very true. Jackson did testify to that, although this argument would have impeached Jackson to what he said was as far as the dialogue that occurred, assuming that the angle of the blast is consistent with where Jackson was placed. But then I thought it's not even clear exactly in which position Bowen is sitting, right? Is that fair to say? There is some ambiguity about that. There is some ambiguity about that, about exactly how he's positioned. It's our contention that if you look at the blood spatter that's to the right above Bowen, the victim, that that could be consistent with the shot originating from Jackson's position rather than Riley's. Didn't the coroner also find, I'm not a ballistics expert, but residue from the shell, the cup in the body, which would suggest a point-blank or near-point-blank firing as opposed to one that was four to ten feet away? Correct. And that's why it's our contention that it would have shown that Jackson could have been the shooter because he was standing right next to Bowen and Riley was sitting on the bed. So there was that distance issue. I want to make sure that I address the question on ballistics, but I want to get to the cocaine intoxication if I can. The proffer that was made on prejudice that was addressed by the federal court below was the report of Manuel St. Martin. The federal court rejected that without an evidentiary hearing by finding that cocaine intoxication is something that's within the general life experience of the jurors and it would be part of their common sense. In my opening brief and in the proceedings below, Manuel St. Martin addresses this, and I think that he provides evidence or he could have provided testimony that could have been helpful to the jury. He talks about how when there are higher doses of chronic use of cocaine over a significant period of time, that it can cause a psychotic state in a person where they believe that they're under attack. And I think that that could have been particularly helpful in this case because if you look at the dialogue or the motive for the killing here, this is a murder committed in a crack house of Riley's friend. It's somewhat inexplicable why exactly it happens and it appears that Riley is in a deteriorated emotional state where he's crying and talking about not being treated right by drug dealers. It would have helped to have expert testimony to put that in context to explain why this doesn't really seem to make sense. The other thing that's important about the Manuel St. Martin report is it talks about, after reviewing records, that Mr. Riley had paranoid personality traits even when he was sober. Manuel St. Martin found that information from the psychiatric records that trial counsel never went out to get but had notice of that said that he was put in a psychiatric ward when he was 16 years old. And so St. Martin concludes that a person who has paranoid personality traits in a sober state is a person who's more likely to become psychotic and delusional when they're under the influence of this chronic cocaine intoxication. At the penalty hearing, the jury found out that Riley had been smoking cocaine for approximately three days before the shooting happened and also he's telling his trial attorneys that he's been dropping cocaine for about two years constantly before this incident. So to address the federal court's holding, I think that St. Martin's report could provide a lot more assistance to the jury than they would just understand as a matter of common sense. Counsel, I appreciate your argument about the drug point, and it may very well be persuasive, but I appreciate it if you could address for me something that is, to me, the most troubling aspect of this, and that is what the jury had to find in this case. If I understand the case law correctly from Nevada under Hearn v. State, the state had to prove three elements, willfulness, deliberation, and premeditation. Our court had found that the Kozalan, I may be pronouncing that incorrectly, that the instruction violated due process. That's our Polk v. Sandoval case. That was decided in 2007, so different time period. But the reality is they found it was a violation of winship, a due process violation. Would you address, please, whether in this case the jury, because of the way the instruction was worded, in effect conflated two of the three required elements and therefore relieved the state of the burden of having to prove an essential element to find first-degree murder? I think that the most compelling reason to find that it did conflate the three elements is the Nevada Supreme Court's own discussion of that jury instruction in the Byford case. What they say is it took the concept of deliberation, the concept of premeditation, and it mashed them into bare intent. And so you don't have to take my word for it. You just look at what the Nevada Supreme Court says in Byford. They said, look, at the time this jury instruction took the distinguishing element of first-degree murder and completely removed it from the jury's consideration. It's indistinguishable in light of the instruction from an intentional murder, which, as we all know, doesn't rise to the level of first-degree murder. And if that's correct, that goes not only to the penalty, it goes to the guilt phase, does it not? I mean, it really upsets the apple cart ab initio. Absolutely. So why isn't that your first argument? In other words, you have this, it seems like a flip-flop from the Nevada Supreme Court. You've got Hearn, and after Hearn your client's conviction becomes final, correct? In 1991, is that the date? Correct, Your Honor. Okay. Then in 1992 we have Powell out of the Nevada court where they forget, or they don't talk about Hearn, but they basically say, now, really, this is really just sort of a singular thing, somewhat more like the California law. And then, as you say, later they retract that in Byford. Correct. But all we really need to look at is Hearn, right? That's the argument that I made in my opening. Because that's the state. Yes. So the state of the law when your client's conviction is final is Hearn v. State. Correct. Okay. So if that is an improper instruction and changes the actual elements that the jury has defined, what then is the consequence? Well, the consequence there is that there's a constitutional error under Sandstrom v. Montana because a critical element has been removed from the jury's consideration, and then the next step after that would be to assess the harmlessness of the error. And in the opening brief I argued that based on the nature of the offense here and the use of the cocaine and Riley's deteriorated mental state at the time, that you really can't find this error harmless. And the prosecutor even said in closing argument that you can find first-degree murder if a person cocks a gun. So that's the type of conflation I think that's very significant here, conflating intent with the higher degree that's necessary for premeditation and deliberation. And for our review, we would simply have to find that we have grave doubt whether the conflation using these instructions resulted in a confusion by the jury and an improper or a lack of a finding of the three necessary elements. Is that right? Correct, Your Honor. Okay. You're down to four minutes. We'll give you the six if you'll sit down. Thank you, Your Honor. Thank you. You know, I think there are a lot of issues in this case. And if you would sort of concentrate on the ones that your opponent has discussed in whatever order you'd like. May it please the court and counsel, my name is Robert Whelan. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. With respect to at least part of this, I guess the first question is, how many times can a petitioner go back to state court and how many opportunities is he going to have to develop whatever theory and facts he decides he wants to have. With respect to the ballistics claim, that was presented in the first state post-conviction action. Counsel, forgive me, I don't want to run your presentation for you, but I am very troubled by this jury instruction. It goes to the heart of the case. And I would be grateful if you would tell me how giving this particular instruction, which our court, I think, admittedly later found was a due process violation, a constitutional due process violation, how can we have confidence, in other words, the absence of great doubt, that the jury in this case found all three required elements. In other words, that the state bore its burden to prove that the defendant had each of those elements and it was proven beyond a reasonable doubt. Yes, well, the first point I would like to make in that regard is that if your honors will look at excerpt of the record 528, the petitioner filed the petition for writ of habeas corpus post-conviction in the 8th Judicial District Court of the state of Nevada, in which he claimed that he was convicted under a felony murder theory. And he was, in fact, granted state habeas relief on that theory with respect to the aggravating factor that was found along with the first degree murder conviction in this case. Does that change anything regarding the three elements that the state had to prove? Well, what it does change is whether or not, and I'm kind of going to address this in a little bit reverse order, is it demonstrates that if there was any error, it was harmless because he has admitted effectively it doesn't make any difference. It was felony murder. Additionally, the theory on which he relied at the time of trial was somebody else did it, Mr. Jackson, apparently. And he effectively conceded that it was first degree murder at that point in time. So let me just stop because this is a significant approach to it. So you're saying that by not taking an alternative approach at trial, he's foreclosed for now bringing the fact that he couldn't have done it in a premeditated manner? Effectively, yes. There wasn't a dispute whether or not it was premeditated and deliberate at trial. Moreover, if you look at the instructions, and I believe that they are correct statements of Nevada law at the time of the trial. You look at the jury instructions, and if you look at instruction number five, EOR 1893, murder of the first degree is willful, deliberate, and premeditated killing of another human being. Okay? Now, they go through instruction number six, talks about what malice of forethought is. Instruction number seven talks about what deliberate intention is. Instruction number eight talks about premeditation. We've read those in detail. What I'm troubled about on this is that given the information that was put into the record, a proffer in the State Habeas II, you've got a guy who smoked $2,000 roughly worth of crack, cocaine in the few days up to the time of the murder. He was obviously emotional, at least according to Jackson's testimony, that he started crying. He had tears in his eyes. He was talking about he was tired of basically living with dope and all that sort of thing. And could not that have influenced the jury to determine whether or not he acted with coolness and reflection or dispassionately, considering the consequences for acting? In other words, proving each of these three elements that was required at that time. All right. The testimony before the jury was, and I direct the court's attention to EOR 1765, the conversation, the testimony regarding he was going to start jacking like that, so he was going to start robbing dope dealers who weren't treating him right. Yeah. Was this while you and Ramrod were counting your money?  Jacking, of course, is a slang term for robbing dope dealers, which, of course, he did. And then he was upset because apparently there was $20. He used $20. And he had the shotgun in his possession, baby, the sawed-off shotgun. What you're saying, if I'm understanding you correctly, counsel, I mean, you're saying the jury could have found that he killed him. I get that. Or they found that he killed him and with premeditation, deliberation, and all that. But the problem is that the jury instructions, at least as our court found later, and your own Supreme Court seems to have agreed in Byford, creates confusion as to what needs to be found. They seem to be conflated. And this is a capital murder case. We look at these things very, very carefully. And the question is, did the state bear its burden to prove beyond a reasonable doubt each of these three things? All you said about what he did with the dope and all that stuff, that's all great. But that doesn't answer my question. Well, the question isn't whether the evidence would support a finding of deliberate premeditation. The question is, was the jury told that it had to find both deliberate and premeditated? I believe it was, Your Honor, because by virtue of the totality of the instructions here. And again, just for ease of reference, will you give us the excerpt numbers again of what you're referring to on the instructions? Certainly, Your Honor. I direct the court's attention to EOR 1892, EOR 1893, EOR 1894, EOR 1895, EOR 1896, EOR 1897, and EOR 1898. Okay, so now can I ask you just, I want to go back to your first point before we now get to the constitutionality issue. Because your first argument is that he really didn't argue this trial, and now he's arguing it belatedly. So this wasn't in the first habeas petition, correct? No, it was not. It was in the second habeas petition. Yes, I believe it was. Okay, so the first habeas petition comes up to the federal court, and the federal court says, you know, not exhaustive, send this thing back. So then he gets to write a new habeas petition and then exhaust, et cetera. So at that point, he makes this argument, but Nevada gives him a procedural default, which is, as Reinhart points out, doesn't, by various case law, pass it independent and adequate. So that means when he comes back to the federal court, in effect, this is his first habeas petition, right? Because no habeas petition has yet been adjudicated by the federal court. By the state or the federal court at this point, on the merits. The state court did adjudicate one petition prior to that. It adjudicated one petition, but then when it came back down, it got sent back from the federal court. That was his second petition. Second state petition. When he raises this issue, the state doesn't give it a merits, or the court doesn't give it a merits determination, correct? Should have been raised on direct appeal. Okay. But then, when that happens, he then is able to come back to federal court, because now he's really asking his first federal petition be decided on the merits since there was no federal decision yet, correct? We call it his second habeas petition, but there's been no adjudication by the federal court yet, right? That's correct. Okay. Let me just finish here. Go ahead, please. So now we're back to federal court. We've got two state habeas petitions. The second one procedurally defaulted. So tell me what is your best case for saying that the federal court cannot now consider this de novo when the state court decided that it was procedurally defaulted? Well, basically, the case authority I would rely on is, well, I'd rely on the statute, 28 U.S.C. 2254-D, because, in fact, even though it was procedurally barred, there is a line of authority in this court that says that that is a determination on the merits. Okay. So if it were a determination on the merits, we might be looking at it one way. But if we determine that these are not adequate and independent state bars, I mean, this procedure is complicated, and you do it every day, so that's why I'm asking you. So then it comes, if it's determined that it's not an independent and adequate state ground, then it comes back to the federal court, and we adjudicate it on habeas, right? Right. I'm still looking for a concrete either case or section of the EDPA that would say we shouldn't just look at this straight up. Well, what you are, in effect, doing, Your Honor, is construing an issue of state law, whether or not the elements of the crime themselves are adequately reflected in these instructions. Now, this court has recently, in light of Woodall and Moore, reversed some cases with respect to this instruction. Okay. Now, the Nevada Supreme Court in NECA said there was a change in the law prior to Biford. This is what the law of the state of Nevada was, and this is what was required to be proven under Nevada law. Okay, but can I ask you about that? Yes. Because I'm looking at, I try to have a little chronology about this, because it is complicated in Nevada. I hear what NECA said, but don't we take the law as found in 1981 by Hearn, which had not yet been tinkered with by Powell or Biford or our Polk decision? Your Honor, prior to the hearing, I provided the court with supplemental authorities, the pain versus state, and that is, yes, and that shows a couple of things. The Kaslan instruction is okay under Nevada law, and it sufficiently describes the elements of the offense. It's in 1965? Yes, Your Honor. And that shows as well that Kaslan... McEwen asked about Hearn, I think it was, in 1981, which said premeditated murder has three separate mens rea elements. And those three elements are reflected in the instructions. Okay, so can we agree that Hearn v. State controls because his conviction is 91, so we're looking at Nevada law before 91 to see what the state of the situation is, right? If your version of Hearn was correct, you'd win, right? You say Hearn says that this is proper. The first question is what controls that period, and Judge McEwen mentioned Hearn, which started in 1981, and Kaslan and Powell came in 1992. So we're in the pre-Kaslan and Powell era and the post-Hearn era. If we can agree on that, then we can discuss what Hearn provides. Well, what I would offer to the court is that the Kaslan instruction was adjudicated as not only constitutionally proper, but as correctly stating what was required to be proved under Nevada law. And you're looking to Payne for that? Yes. Okay. So let me just get this straight. And then, of course, Kaslan itself. Sure. And? But because we don't have Payne to look at here, we would look at both Payne and Hearn, however, correct? Yes. Okay. I just wanted to understand kind of the dividing line. All right. Thank you. Is it your position that regardless of what we might think, that the Nevada Supreme Court's constitutional analysis of whether the instructions satisfy due process, that basically they're controlling, not our construction of federal constitutional law? Yes. That's interesting. Well, the reason why I say that, it's an issue of state law, but the elements are. I agree. And we construe whether state law complies with the Constitution all the time, don't we? Well, we're talking about a pretty fundamental thing here. If the Nevada Supreme Court says that the moon is made of green cheese, I think that's interesting. But if the moon is not made of green cheese, and in order to prove that it isn't, I send a man to the moon and find out that it isn't, I can rely on that, right? Even though the Nevada Supreme Court says it's made of green cheese. If you're asking me if I think the Nevada Supreme Court is infallible, I understand. I'm not trying to be disrespectful. If it is a matter of state law that the moon is. I'm not trying to be disrespectful of the Nevada Supreme Court. I'm simply saying that under Hearn, under Kaslan, there are three elements that have to be proven. This is really basic criminal law. The state bears the burden to prove beyond reasonable doubt that each of these elements has been proven by the state. If we, looking at the evidence that's proffered and is before us properly under noble review, if we conclude that there are grave doubts whether this allowed the defendant here to get a constitutional trial to get due process, we have the right, do we not, to overturn that? You can give a grand of red, certainly. Let me ask it a little bit differently. Because I understand your concern about the tension that we're really not looking to state law for federal constitutional questions. But my understanding of the construct here is that you have a criminal trial. The state has to prove all the elements, whatever they are, beyond a reasonable doubt. And then the constitutional claim might arise if somehow the instructions relieve the state of proving those elements which the state got to define in the first place. So isn't that really the analogy we're looking at here? It's not whether the moon is green. We're not saying that the Nevada Supreme Court hasn't said what it said. We're just saying if we take the Nevada law, which he's convicted under, then we have to look at what happened at the trial. And did the trial instructions somehow, in effect, cherry pick or mush the Nevada law? And you're saying, no, and you've given me a constellation of instructions to look at. So isn't that really what we're supposed to do is say, okay, we're going to look at this constellation of instructions, and then we're going to see if somehow the prosecutor by these instructions was relieved of showing an element of the crime. Is that a fair way? Yes. And I know you disagree with what the result might be, but I just want to try to understand that we're all on the same page in terms of the construct. And we're looking at what that law was as of 1991. When the trial took place. Yeah. Right. All right. And we know that as of that date, we had Hearn, and you've given us another case to look at from 1965, 15 years or so, 16 years before Hearn. And so we see that was the law, in effect, as of 1990 and 1991. In 1992, the state changed its view and had Castle and Powell. And NICA says, or NICA, says that Byford, which changed it again, abandoned the line of precedent, starting with Powell. They say Powell started a line of precedent, which, like Castle and said, you only needed to prove a mushed element. But prior to that, we had Hearn. Well, I don't think Castle and the Castle and changed anything, really. Well, but NICA said that it abandoned. I mean. Abandoned the line of precedent, starting with Powell. Powell and Castle, both. But Castle was not a change in the law. Well, if the line of precedent started with Powell, what was the difference between Powell and Castle? That was part of the whole change from Hearn. You don't think there's a change between Hearn and Castle? No. Not if there are two different ways of expressing the same thing. Okay. So we could look at Hearn, and that would tell us if that's the same thing. Let me ask a different question. I'm now looking at Payne v. State. Could you point me to the language? Maybe I'm just not seeing it quite quickly, but it's a pretty short little opinion. Could you point me to the language in Payne v. State where you think we ought to look for your proposition that you don't need each of these elements set out, like Mr. Reiner? I can't point to the precise language. Well, you come in here with a brand-new thing that says this is the answer to my prayers and the answer to our case, and now I'm looking at the case, which we only got this morning without a copy of the case, and I'm just trying to understand the argument. Unfortunately, we have Westlaw. I'm looking at the case, but I'm not seeing the language, that's all. Okay. Go ahead. Ultimately, Your Honor, based on the evidence that was presented in this case, there is no doubt that premeditation, deliberation, and willfulness was proven in this particular case. As I was pointing out, the testimony showed that Mr. Riley was at the house along with the victim. He had told another person he was unhappy and he wanted to start jacking, robbing dope dealers. Mr. Boland was in the room. The defendant, Riley, asked him whose dope it was, and Boland said, it's mine. And Riley said, it's not anymore. And the victim, Mr. Boland, said, well, you're going to have to kill me to get it. And then he says, okay, and Boland says, well, do you mind if I finish smoking this? And Riley says, go ahead. And then he says, are you done? Are you ready to die? And the victim says, yeah. And he shoots him in the chest with a shotgun. There is no question that premeditation, deliberation, and willfulness have been shown in that. Now, counsel has argued that, well, okay, there is some evidence of cocaine intoxication. Of course, the jury knew that. The jury didn't know that they had to show deliberation, which is a calm, reasoned time to deliberate and make a decision, and that what could affect that decision was intoxication, and that he had been under three days' worth without sleep of taking cocaine, and he was in a highly emotional state. They had no idea that that could affect their decision on whether they met deliberation or what deliberation was. Your Honor, if the record doesn't show deliberation, frankly, I don't know what does. And I can't imagine St. Martin coming in here 20-some years later saying, oh, well, it might have affected. He doesn't say it did. And, oh, additionally, it might have affected that. No jury is going to buy that on this record. Well, do you think the jury knew what the effect of cocaine was on the ability to deliberate and what the law was as to the effect of intoxication on the ability to deliberate? And they were aware that the fact that he had not slept for three days because he was under cocaine and was in a highly emotional state and not thinking clearly, that the jury would have said, well, that doesn't affect deliberation, the definition of deliberation. He went there with a plan to rob. He gave the opportunity. He sat there. He was in the process of robbing this individual. And he said, the individual said, wait a minute, let me smoke this crack. And then he said, are you ready to die? Do you think the other individual made a rational, deliberate decision when he said, let me smoke it and then shoot me? He might not have thought he was actually going to do it. It doesn't make any difference. It doesn't make any difference what the victim thought. This allegedly comes from Jackson, right? This is not what Mr. Riley said. This is what Mr. Jackson said. Mr. Jackson is saying that Riley said this. So if the defense is correct, at least the jury could consider that none of this was true. He never said any of that. If the jury didn't believe Jackson because of testimony that is part of the proffer, might have come in. Well, you have Kim Johnson saying she heard conversation back there. Okay, go ahead. So you've got that. You also have other corroboration, Leotis Gordon having heard the shot while he's sleeping. And he comes in and, you know. We know he was shot and dead. But we're wondering, does it fit all the elements? May I ask you, am I correct that Nevada law deliberation requires coolness and reflection and a dispassionate weighing process and consideration of consequences before acting? Is that deliberation? That's the new language under BIFR. Okay. And do you think that the evidence compels a finding that the defendant acted with coolness and reflection and engaged in a dispassionate weighing process and consideration of consequences before he fired? You do? Yes, I do. Okay. And that that's not just that he could have, but that he did do that, that that's what a jury had to find beyond a reasonable doubt. If you accept that definition given in BIFR years later, I believe the circumstances in this would satisfy that definition as well. Well, that's not to say that it would satisfy it, but that a jury would have to find it. Not that it could, but that it did find that. And that it found it beyond a reasonable doubt. I have no doubt the jury found that beyond a reasonable doubt. Would you agree that Payne v. State doesn't really deal with anything about these instructions? I mean, it deals with the felony murder rule, but I don't see anything here that suggests that the Nevada Supreme Court in 1965 looked at these three elements and dealt with the problem of whether, because of the wording, there was a conflation of two of the required elements. Do you agree with that? By virtue of the wording in here? Uh-huh. No, I do not agree that there was a conflation. Do you think Payne can deal with that? What they do say in Payne, what they say, they recite the statute in Payne with the three elements, and then they talk about, you know, when you can get your intent. And they're saying you don't need it, like, in advance. You can, like, at the very moment you shoot, you can, your intent can come into play. So I thought the point of Payne is really saying, look, we don't, you don't need, like, a lead-up to this premeditation. You can be right in the heat of the moment and get your intent kind of instantaneously. But it doesn't talk about how the view can be conflated. Okay. I think we're over time already. And, you know, I don't think we really wanted you to admit what you don't want to admit. You've had a fairly rough questioning session, and you stood up very well to your views. I don't view it as abuse ever when I'm here, Your Honor. Okay. Well, and you can appreciate that, you know, we have to kind of, that's why I was interested in the procedure in your view. Because even before we get to any of this, this procedure is important, as you pointed out in your brief. And the procedure is not very simple and not very clear. And Nevada's position on some of these issues has changed from time to time. You might consider, if I might offer this respectfully to the court, certify a question to the court, to the Nevada Supreme Court. What would we ask them? What exactly, if you're inclined, what exactly were the elements and what exactly did the state have to prove at the time of this trial? Well, you know, we kind of did that once on the Council on Instruction on another panel. And now you're saying we really should ask them to go back in time and basically tell us what Hearn says, or to tell us if it says what it says. I'm just trying to understand what we would ask them. Well, that's, I'm trying to be helpful. No, no, I know. Are there any other alternatives? Well, I'll ask you while you're here, you know, are there any other alternatives to look at? How old is this defendant now? He was 38, if I recall correctly, back when he did the slaying. And we're about 35 years ago. It's been a while, you know. Well, if we keep certifying it back and go another four or five rounds, we may solve the problem, at least with the capital punishment. Well, sometimes these cases are settled. We know that from hearing back from Council. So I suppose, you know, nothing is without some solution. Thank you, Your Honor. You're always welcome. Thank you very much. Thank you, Your Honor. You have a few minutes left, I think. Six minutes, it says? Six minutes. I wanted to address some of the arguments made by the State. If that's the purpose of rebuttal. Thank you. One of the things that I wanted to point out that I think is important, again, from the Byford decision is that given the instruction that was used in Riley's case, the Nevada Supreme Court in Byford says that that instruction led to the complete erasure, erasure of the difference between first and second degree murder. I think that's a really important finding. Council talks about how there's one instruction that talks about how there's three elements, which is true, but then there's the Caslon instruction itself, which takes the three elements and it collapses them into one element, which is just the element of bare intent. The Nevada Supreme Court is very candid in Byford about what was the effect of this change in the law at the time, and they say that it basically erased the distinction between first and second degree murder. I think that they should be taken at their word. Also, I did want to mention the factors or the language that was used in Byford, although I know that Your Honor just mentioned it, which is it talks about how the deliberation cannot be formed in the heat of passion, and if it is formed in the heat of passion, then the killing has to occur after the passion has subsided. If you look at this record and if you look at the facts, I don't know how anyone could say that this wasn't something in a heat of passion or that there was any opportunity for that passion to subside. There's a critical distinction between sufficiency of the evidence review, which is one of the ways that the harmless error was phrased, and an issue of jury instructional error. The issue here isn't whether any reasonable fact finder could have found that there was premeditation, like the prosecutor said. The issue is whether the jury instruction had a substantial and injurious effect on the verdict, and that test is whether or not the court has graved out as to whether or not there was prejudice. The other element that the court talked about was consideration of the consequences of an action, and again, I don't see that element as part of deliberation here either. Again, your Honor mentioned the Payne case. From my reading of Payne when I read it a while ago, it's talking about the timing issue. It's not necessarily talking about deliberation itself and what does deliberation mean. In the closing argument, the prosecutor argued to the jury that aiming and firing a gun was premeditation. That's at 7 EOR. We keep sort of using premeditation and deliberation interchangeably. Are you complaining about what the definition of premeditation is or the definition of deliberation, or that there isn't any definition of deliberation? I'm complaining about all of them. I don't even think that the definition of premeditation is adequate either. But I do agree with the court that the clearest way to look at this is that the element of deliberation has independent meaning on its own. And so I apologize if I was speaking loosely when I said premeditation.  But I even am hard to find the element of premeditation in here either, because they're talking about actions that is instantaneous as successive thoughts of the mind. It's not exactly instantaneous. If you take the testimony that he said to somebody, I'm going to kill you, and the man says, well, let me finish smoking, and then he shoots you, that's not instantaneous. When I used the word instantaneous, I was talking about the wording of the jury instruction. As to the court's concern about the facts of the case, I think that that goes back to what the court mentioned about the element of deliberation, about how it can't be formed in the heat of passion, and if it does, the heat of passion needs to subside. And it's characterized by someone carefully considering the consequences of their actions. Can I ask you this question? I've got Byford up here, and I just want to read you from page 700 of that. I'm sorry, it's page, I think it is 700, yeah. It says, we conclude that this line of authority, meaning the Kazlan, should be abandoned. By defining only premeditation and failing to provide deliberation with any independent definition, the Kazlan instruction blurs the distinction between first and second degree murder, and then cites Green's further reduction of premeditation and deliberation to simply intent, unacceptably carries this blurring to a complete erasure. I think you kind of talked about that a minute before. This seems to me to be the Nevada Supreme Court's, if you will, imprimatur on the problem that there is a conflation of these elements. Do you agree with that? Absolutely. And what learned counsel from the state indicates, this is state law we have to construe, this is the Nevada Supreme Court, if it itself, in looking back at these instructions, finds that there was a blurring, does that not raise a serious, if you will, grave doubt, that in fact the state did not bear its burden to prove each of the three elements that we've been talking about. Absolutely. And I think that the Polk decision already mentions that pretty explicitly, where they talk about how it's a federal question if the jury instructions omit a critical element of the offense. So I think that's absolutely the case. What do you do when the Nevada Supreme Court changes direction slightly again to try to soften the blow of Byford and then they have Garner v. State saying, well, that Kaslan instruction is not a constitutional problem. And then they jump forward a few years later in NECA, going after the Polk decision out of the Ninth Circuit. Do any of those affect your case? The short answer is no. And the reason it isn't is because of when Mr. Riley's conviction was final. For those people who were convicted of first degree murder between 1992 and 2000, there could be another argument, and I did make many of those arguments in the opening brief, about the vagueness of the scheme if there's no difference between first and second degree murder. And I also complained about the issue of subterfuge, whereas the court mentioned in Garner they characterized the issue as a clarification of the law. And then later they came back in NECA and said, no, no, no, we overruled Garner. It's not a clarification, it's actually a change in the law. And I think that that type of action by the Nevada Supreme Court is also problematic. But the short answer is I don't think any of that is implicated in this case because Hearn was the law at the time here and it required the three elements. As to the 1992 to 2000 cases, I think there are a lot of other interesting federal constitutional issues that are presented. Even if the law wasn't changed until later, it at the very least constitutes, I assume, the Nevada Supreme Court's weighed perspective on the effect of the then existing instructions, does it not? It shows their thinking, their intent. Is the court referring to the Garner or to NECA? No, I'm talking to Biford, what they said in Biford. I know later on they had the other cases that my colleagues referred to and I know they want to be careful about the retroactivity, et cetera. But for our purposes, where we have to look at these instructions that were given at the time of this trial to determine whether or not the state board's burden and the fact that the state of Nevada's highest court viewed these as blurring or erasing one of the elements. It's asking how that should be considered, how that should be weighed in our own deliberation. I think that's very, very compelling evidence that a federal court of appeals could rely on to say the state court was candid and should be taken at its word. So I think it's very compelling evidence. Thank you very much, John. Thank you, Your Honor. Thank you both. Thank you. Sorry we don't have more time. We didn't get to many issues that are worth exploring. All right. Interesting problems. The case just argued will be submitted.
judges: Reinhardt, McKeown, Smith